```
             IN THE UNTIED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                       WESTERN DIVISION


PHILLIP C. WEST; ET. AL.                              PLAINTIFFS

V.                           CIVIL ACTION NO. 5:15-cv-46-KS-MTP

NATCHEZ, MISSISSIPPI, ET. AL.                         DEFENDANTS
```

PLAINTIFFS' MEMORANDUM OF AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR
<u>PRELIMINARY INJUNCTION AND FOR COURT ORDERED RELIEF</u>

Plaintiffs , pursuant to Fed.R.Civ.P. 65, by and through counsel, in accordance with L.U.R. Civ. 7(b) file their memorandum of authorities in support of plaintiffs' motion for preliminary injunction and state:

I.   <u>Introduction</u>

This is a voting rights action filed on behalf of African American registered voters of Natchez, Mississippi (NM) alleging the six (6) aldermanic wards precleared by the United States Attorney General (USAG) on August 12, 2003 is now malapportioned under 2010 census data. The six (6) wards are used to elect alderpersons and municipal executive committee members and violate the one-person one-vote principle of the Fourteenth Amendment to the United States Constitution and the results test of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. Section 10301.

Pursuant to Fed. R. Civ. P. 65(a), plaintiffs seek a preliminary injunction to enjoin the further use of the malapportioned NM ward plan and seek injunctive relief to require

defendants to develop a ward plan within ninety (90) days that satisfies both the constitutional one-person one-vote principle and the statutory provisions of Section 2 of the Voting Rights Act of 1965, in order to conduct NM municipal primary elections on Tuesday, May 3, 2016.

According to the 2010 census data, the NM six (6) ward plan has a 25.49 percent total deviation, is malapportioned and violates the one person one principle of the Fourteenth Amendment to the United States Constitution. As a result of the aforementioned violations of federal law, there is no legal ward NM plan from which the May 3, 2016 municipal primary elections may be conducted.

## II. Facts

\*\* According to the 2010 census data, the precleared August 12, 2003 NM ward plan has the following total population, ideal district population, deviation and percentage of deviation from the mean in the six (6) wards:

| Ward | Total Pop. | Ideal Dist. Pop. | Deviation | Dev % |
|------|-----------|------------------|-----------|--------|
| 1 | 2503 | 2633 | -130 | -4.93% |
| 2 | 2544 | 2633 | -89 | -3.36% |
| 3 | 2934 | 2633 | +301 | +11.45% |
| 4 | 2263 | 2633 | -370 | -14.04% |
| 5 | 2692 | 2633 | +59 | +2.26% |
| 6 | 2859 | 2633 | +226 | +8.60% |
|   | 15,795 |                |           | 25.49% |

\*\*   The total deviation among the six NM (6) wards is 25.49 percent and violates the one person, one vote principle of the Fourteenth Amendment.

### III.   Legal Arguments

A.   The Existing NM Ward Plan Has A 25.49 Percent Total Deviation And Should Be Enjoined

The basis of plaintiffs' argument is the following proposition:

> [T]he Equal Protection Clause requires that a State (or political subdivision thereof must) make an honest and good faith effort to construct (electoral) districts...as nearly of equal population as is practicable (notwithstanding that) it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters.

Reynolds v. Sims, 377 U.S. 533 (1964).  This general proposition has been refined by subsequent decisions of the United States Supreme Court.  In Karcher v. Daggett, 462 U.S. 725, 741(1983), the Court explained that:

> The showing required to justify population deviations is flexible, depending on the size of the deviations, the importance of the State's interests, and the availability of alternatives that might substantially vindicate those interests yet approximate population equality more closely.  By necessity, whether deviations are justified require case-by-case attention to these factors.

Id. at 741. The Court further clarified the permissible size of deviations within an apportionment plan in the case of Brown v. Thomson, 462 U.S. 835, 842-43 (1983).   In Thomson, the Court

indicated that some deviations from population equality are permissible, but, the Court set forth criteria for determining when deviations are not permissible under the Fourteenth Amendment:

> [W]e have held that "minor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require justification by the State." [citation omitted] Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation of under 10% falls within this category of minor deviations. [citations omitted] A plan with larger disparities in population, however, creates a prima facie case of discrimination and therefore must be justified by the State.

Id. at 842-843.

In the case at bar, the undisputed material facts indicate that the total population deviation among the six (6) wards in NM is 25.49 percent[1]. This figure clearly exceeds the 10% deviation recognized as "minor" by the United States Supreme Court. Thus, in accordance with the clear language of Thomson, NM must justify this excessive deviation.

As will be demonstrated hereinafter, NM can offer no legitimate or permissible justification for the 25.49 percent total deviation among the six (6) wards. Thus, in following clear judicial precedent established by the United States Supreme Court,

---

[1] Plaintiffs derive this figure from the formula set forth by United States District Judge Neal B. Biggers, Jr. in Tucker v. Burford, 603 F.Supp. 276, 277 (N.D. Miss. 1985) wherein the Court explained the "percentage computed is the deviation between the most and least population districts." Id. at 277, n.1.

the existing NM ward plan in unconstitutionally violates the one-person one-vote principle as set forth in Reynold v. Sims.

Accordingly, inasmuch as the existing 2003 ward plan violates the one-person one-vote principle and will continue to violate plaintiffs' constitutional rights, the Court should enjoin any further use of the malapportioned NM ward plan. See, e. g., Connor v. Finch, 431 U.S. 407, 418 (1977); Fairley v. Hattiesburg, Miss., 584 F. 3d 660, 675 (5th Cir. 2009) (If a population deviance exceeds 10%, it constitutes a prima facie case of invidious discrimination that requires the municipality to prove a legitimate reason for the discrepancy,"); see also Brown v. Thomson, 462 U.S. 835, 843 (1983); Mahan v. Howell, 410 U.S. 315, 325 (1973); cf. Bd. of Estimate City of N.Y. v. Morris, 489 U.S. 688, 702 (1989) ("We note that no case of ours has indicated that a deviation of some 78% could ever be justified,"). Simply put, a city's maximum deviation percentage is the sum of (1) the percentage by which the district containing the largest population deviates from the average district population and (2) the percentage by which the district containing the smallest population deviates from the average district population. Jordan v. Winter, 541 F.Supp. 1135, 1138 (N.D. Miss. 1982) (three judge court) (enjoining enforcement of Mississippi's congressional redistricting plan to prohibit further use due to a 17.6% total deviation); Cook v. Luckett, 575 F.Supp. 479 (S.D. Miss. 1983) (enjoining enforcement of Madison County's

redistricting plan due to impermissible total deviations); NYC Board of Estimate v. Morris, 489 U.S. 688, 703 (1989).

Under the aforecited legal precedents, this Court should enjoin the 2003 ward plan and afford NM "an opportunity to enact" an acceptable plan. Mississippi Chapter, Operation PUSH, Inc. v. Mabus, 932 F.2d 400, 406 (5th Cir.1991); see Lawyer v. Department of Justice, 521 U.S. 567, 576– 578, (1997); McDaniel v. Sanchez, 452 U.S. 130, 150 n. 30 (1981). If a "governmental body is unable or unwilling to fulfill its legislative duties" by accepting the district court's invitation to develop a redistricting plan" in compliance with the federal constitution and the Voting Rights Act, then it "become[s] the 'unwelcome obligation' of the [district] court to devise and impose a plan." Ramos v. Koebig, 638 F.2d 838, 843(5th Cir. 1981); see Lawyer, 521 U.S. at 576–578, McDaniel, 452 U.S. at 150 n. 30.

B. If NM Fails or Refuses This Court
Has The Authority To Implement An
Interim Court Ordered Aldermanic Plan

When an existing electoral system is declared unlawful under the Constitution or Voting Rights Act, the district court should afford the responsible state authorities the first opportunity to submit a proper plan which remedies the violation. Upham v. Seamon, 456 U.S. 37, 40 (1982); Wise v. Lipscomb, 437 U.S. 535, 540(1978).  If the municipal authority adopts and submits a plan, the district court is required to give the plan deference in

choosing a final remedy. If the municipal authorities are unwilling to submit an appropriate remedial plan, it becomes the "unwelcome obligation" of the district court to fashion its own remedy. Connor v. Finch, 431 U.S. 407, 415 (1975). In devising a court ordered plan, the United States Supreme Court said:

> Whenever a district court is faced with entering an interim reapportionment order that will allow elections to go forward it is faced with the problem of "reconciling the requirements of the Constitution with the goals of state political policy". 52 L.Ed.2d 465, 97 S.Ct. 1828. An appropriate reconciliation of these two goals can only be reached if the district court's modifications of a state plan are limited to those necessary to cure any constitutional or statutory defect.

Connor, 407 U.S. at 731. The next quadriennal NM aldermanic election is on May 3, 2016. In order to assure that a constitutional and statuory ward plan is available to conduct the elections, this Court should enter an order affording NM a ninety (90) day opportunity to meet its statutory and constitutional legal duty to reapportion its municipal ward lines. If NM fails to comply, the Court should adopt its own plan or plaintiffs' proposed plan, after an evidentiary hearing.

      C.   The Propriety of the Entry of a Preliminary Injunction

In order to secure a preliminary injunction, the movant has the burden of proving four elements (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable

injury if the injunction is not issued; (3) that the threatened injury to the movant out-weights any damage the injunction might cause to the opponent; (4) the injunction will not deserve the public interest. <u>Campaign For Southern Equality v. Bryant</u>, 64 F.S. 3d 906, 949-952 (S.D.Miss. 2014); <u>Opulent Life Church v. Holly Spring, Mississippi</u>, 697 F. 3d 279, 288 (5th Cir. 2012). <u>Watkins v. Mabus</u>, 771 F.Supp. 789, 804 (S.D. Miss. 1991) (three judge court). <u>Enterprise International, Inc., v. Corporation Estate Petrolera Ecuatoriana</u>, 762 F.2d 464, 471 (5th Cir. 1984). These four elements are mixed questions of fact and law. <u>Apple Barrel Productions, Inc., v. Beard</u>, 730 F.2d 384, 386 (5th Cir. 1984); <u>Canal Authority v. Callaway</u>, 489 F.2d 567, 572 (1974). The key to the entry of a preliminary injunction is a finding of likelihood of success on the merits, although a failure to prove separately each of the four elements of the four prong test can cause a denial. <u>Apple Barrel Productions</u>, 763 F.2d at 389; <u>Southern Monorail Co., v. Robinson & Myers, Inc</u>., 666 F.2d 185, 186 (5th Cir. 1982).

For the foregoing reasons, a preliminary injunction should issue:

1.   Plaintiffs have shown a likelihood of success on the merits of their one person one vote claim due to the 25.49 percent total deviation.Under Section 2 of the Voting Rights Act, plaintiffs will prove a history of offical racial discrimination in NM which has a present day effect upon the ability of African

American citizens to elect candidates of their choice and equally participate in the political process; legally significant white bloc voting in African American versus white elections exists in NM; there are gross statistical disparities in socio-economic conditions between African American and white citizens in NM and African American citizens are less affluent and less well educated; At the trial on the merits of this cause, the key issues will be racial bloc voting and the dilution of African American voting strength under the NM ward plan. Plaintiffs can demonstrate a probability of success on the merits. See, e.g. Taylor v. Haywood County, 554 F. Supp. 1122 (W.D. Tenn. 1982); Johnson v. Halifax County, 594 F. Supp. 161 (E.D.N.C. 1984); Kirksey v. Allain, 635 F. Supp. 347 (S.D. Miss. 1986) (preliminary injunction enjoining judicial elections in Mississippi).

2. Irreparable injury for violations of constitutional and statutory rights under the Voting Rights Act will ensue to African American voters in NM if the May 3, 2016 municipal elections go forward under the malapportioned plan and the present electoral system is ultimately found to be in violation of the rights protected by Section 2 of the Voting Rights Act of 1965, as amended and the Fourteenth and Fifteenth Amendments to the United States Constitution. A deprivation of costitutional and statutory rights constitutes irreparable harm and injury, Cohen v. Coahoma County, Mississippi, 805 F. Supp. 398, 406 (N.D. Miss. 1992); Opulent Life

Church, 697 F. 3d at 288; Sampson v. Murray, 415 U.S. 61, 90 (1974); Elrod v. Burns, 427 U.S. 347, 373 (1976).

    3.   The relative harm to plaintiffs from the denial of an injunction will exceed the harm to defendants from the granting of such an injunction.

    4.   The public interest will be best served by the granting of an injunction.

    Plaintiffs have satisfied the four (4) factors necessary for a court to grant a preliminary injunction in this case.

    The proof in this case demonstrates a clear one person one vote and a Section 2 violation. Therefore, if the Court requires NM 90 days to develop a plan, the May 3, 2016 municipal elections can go forward as scheduled; this Court should exercise its equitable powers upon finding a one person one vote and/or Section 2 violation should enjoin NM to develop a new ward plan.

## IV.  Conclusion

    For the foregoing reasons and on the authorities cited, the Court should set this cause for a hearing on the merits as soon as possible and enter a preliminary injunction enjoining defendants to adopt a new ward plan based on 2010 census data within ninety (90) days to be used in the the May 3, 2016 municipal elections for aldermen in NM.

SO BRIEFED, this the 8th day of July, 2015.

                                          Respectfully submitted,

                                          PHILLIP C. WEST, ET AL.
                                          Plaintiffs

                                       By: */s/Ellis Turnage*
                                          Attorney for Plaintiffs

OF COUNSEL:

ELLIS TURNAGE, MSB #8131
TURNAGE LAW OFFICE
108 North Pearman Avenue
Post Office Box 216
Cleveland, Mississippi 38732-0216
Tel: (662) 843-2811
Fax: (662) 843-6133
eturnage@etlawms.com

-11-

CERTIFICATE OF SERVICE

    I, ELLIS TURNAGE, the undersigned attorney, do hereby certify that I have this day filed the plaintiffs' memorandum of authorities in support of plaintiffs' motion for preliminary injunction and for court ordered relief with the United States District Court for the Northern District of Mississippi via the PACER/ECF system, which has sent notice to the following ECF participant:

    Hon. J. Chadwick Mask
    cmask@cwplaw.com

    THIS, the 8th day of July, 2015.

                                         /s/Ellis Turnage
                                            ELLIS TURNAGE