**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**PHILLIP C. WEST, ET AL.**                                              **PLAINTIFFS**

**V.**                              **CIVIL ACTION NO. 5:15-cv-46-KS-MTP**

**NATCHEZ, MISSISSIPPI**                                         **DEFENDANT**

---

**DEFENDANT'S MEMORANDUM OF AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

Defendant Natchez, Mississippi ("Natchez"), through counsel and pursuant to FED. R. CIV. P. 65(a), submits its Memorandum of Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction [ECF No. 10] as follows:

## I.      **INTRODUCTION**

The issue before the Court is whether the "extraordinary remedy" of a preliminary injunction is required to prevent the threatened harm complained of by Plaintiffs. Natchez submits that a preliminary injunction is not necessary, nor have Plaintiffs carried their burden of demonstrating that each prerequisite to the granting of preliminary injunctive relief is present in this case. Plaintiffs' request for preliminary injunctive relief must be denied.

The crux of Plaintiffs' request for preliminary injunctive relief is their allegation that population changes between 2000 and 2010 have caused Natchez's six aldermanic wards to become malapportioned, with a total deviation of 25.49% from the ideal population of each ward. Plaintiffs allege that Natchez's current wards violate the one-person, one-vote principle of the 14th Amendment and Section 2 of the Voting Rights Act of 1965 ("VRA"). Based on these allegations, Plaintiffs request Natchez be enjoined from conducting future elections based on its

1

current wards and be ordered to redistrict its wards to accommodate population changes identified in the 2010 census.

Plaintiffs' request for preliminary injunctive relief is flawed in several respects. First, Plaintiffs have not proven they are registered voters of an <u>underrepresented</u> ward—a fundamental requirement for establishing standing to assert an injury in one-person, one-vote litigation. Second, Plaintiffs disregard the fact Natchez is already redistricting its aldermanic wards. This process will be complete before the qualifying deadline for the next municipal primary election. Put another way, the threatened injury Plaintiffs seek to prevent through the "extraordinary remedy" of preliminary injunctive relief is already being addressed by Natchez. The City's next election will not be based upon Natchez's current ward boundaries, but rather upon the ward boundaries set forth in the redistricting plan being formulated by Natchez and its planner, Michael Slaughter of Slaughter & Associates, PLLC. There is no threat of injury for this Court to address through preliminary injunctive relief.

Natchez submits that Plaintiffs' request for preliminary injunctive relief should be denied. Natchez further submits that the proper course of action, if any action is warranted, is for this litigation to be stayed pending Natchez timely completing its current redistricting efforts.

## II.    FACTUAL BACKGROUND

Natchez is a special charter municipality operating under a Mayor and Board of Aldermen form of government. Natchez's Mayor is elected at large, while the six members of the Board of Aldermen are elected from single-member wards by majority vote to serve four-year concurrent terms. Legislative power in Natchez is exercised by vote of the members of the Board of Aldermen, with the Mayor voting only in cases where there is a tie.

842969

Natchez's aldermanic wards were last redistricted by Ordinance adopted on August 26, 2003. This redistricting was completed in response to population changes identified in the 2000 census, and was pre-cleared by the U.S. Department of Justice under Section 5 of the Voting Rights Act of 1965 on February 24, 2004.[1]

Following the release of the 2010 census, Natchez retained William Rigby of Holland & Rigby ("Rigby") to study the population changes identified in the 2010 census and develop a plan to redistrict the City's ward boundaries to accommodate these changes. In connection with this process, the City conducted numerous public hearings on the redistricting plan proposed by Rigby, and received and considered an alternative plan from members of the public. Thereafter, Natchez adopted an ordinance redistricting its ward boundaries on October 27, 2011 ("2011 Redistricting Ordinance"), and an ordinance amending its special charter to reflect the new ward boundaries on November 8, 2011.

On December 20, 2011, Natchez submitted its 2011 Redistricting Ordinance to the U.S. Department of Justice for pre-clearance. On February 21, 2012, the U.S. Department of Justice requested additional information from Natchez relative to the redistricting, which information was provided on February 28, 2012. On April 30, 2012, the U.S. Department of Justice issued a letter interposing an objection to Natchez's 2011 Redistricting Ordinance.

Natchez's last party primary elections were conducted on May 1, 2012 and May 15, 2012, and its last general election was conducted on June 5, 2012. Because the U.S. Department of Justice interposed an objection to Natchez's 2011 Redistricting Ordinance, the 2012 elections were conducted based on the City's ward boundaries as approved by the U.S. Department of Justice in 2004. The results of these elections are not in dispute.

---

[1] Subsequent to this redistricting, Natchez annexed approximately 2.68 square miles of uninhabited territory in 2009. This annexation was pre-cleared by the U.S. Department of Justice on September 22, 2009.

842969

Natchez's next party primary election is set for May 3, 2016, and its next general election set for June 7, 2016. Natchez has retained Slaughter & Associates to prepare a redistricting plan for consideration and adoption by the City consistent with the 2010 census and the one-person, one-vote principle of the 14th Amendment in advance of these deadlines. Natchez anticipates that a plan will be presented by Slaughter and adopted by the City within the coming weeks, following which Natchez will amend its special charter to reflect the new ward boundaries consistent with MISS. CODE ANN. § 21-17-9. Natchez is no longer required to submit its redistricting plan to the U.S. Department of Justice for pre-clearance under Section 5 of the Voting Rights Act of 1965. *See Shelby County v. Holder*, 133 S.Ct. 2612, 186 L.Ed.2d 651 (2013).

### III.    STANDARD OF REVIEW

To obtain a preliminary injunction, the applicant must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the party whom the applicant seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003). The Fifth Circuit has "cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Id*. at 196 (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618, 621 (5th Cir. 1985)). "In considering whether to grant or deny preliminary injunctive relief, the district court must remember that a preliminary injunction is an extraordinary and drastic remedy, and that the movant has a heavy burden of persuading the district court that all four elements are satisfied. Thus, if the movant

4

does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

## IV.    ARGUMENT AND ANALYSIS

Plaintiffs have failed to carry their burden of proving that each of the four prerequisites to granting a preliminary injunction are present. This is fatal to their request for the "extraordinary and drastic remedy" of preliminary injunctive relief. *Enter. Int'l, Inc*., 762 F.2d at 472. Plaintiffs' request for a preliminary injunction should be denied.

Initially, it must be noted that "injury in one-man, one-vote actions results only to those persons domiciled in the underrepresented voting districts." *Fairley v. Forest County*, 814 F.Supp. 1327, 1329 (S.D. Miss. 1993). "Residents of overrepresented districts have no standing to sue." *Id*. Here, Plaintiffs have failed to demonstrate they are registered voters in underrepresented wards. Plaintiffs state only that they are "registered voters" of Natchez. This is insufficient to demonstrate standing to sue or a cognizable "threatened" injury requiring preliminary injunctive relief.

Even assuming for purposes of argument that one or more of the Plaintiffs is domiciled in an underrepresented voting district, their request for preliminary injunctive relief still fails.

A.  Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits.

Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their claims under Section 2 of the Voting Rights Act of 1965 or the 14th Amendment.

Section 2 of the VRA prohibits any "voting qualification or prerequisite to voting or standard, practice, or procedure . . . which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C.A. § 10301(a).

5

842969

According to *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92, L.Ed.2d 25 (1986), three necessary preconditions must be met for the Plaintiffs to prevail in a Section 2 VRA claim, namely:

(1) that the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district;

(2) that the minority group is politically cohesive; and

(3) that a bloc-voting white majority usually defeats the minority's preferred candidate.

*Id*. at 50-51, 106 S.Ct. at 2766.

In their Motion and Memorandum, Plaintiffs make reference to the three *Gingles* preconditions, but provide no specific evidence that any one of these preconditions are met. [ECF Nos. 10, 11]. More is required to demonstrate a substantial likelihood of success on the merits of their Section 2 VRA claim. This is particularly so when the evidence demonstrates that half of the members of the Natchez Board of Aldermen are African-American, and that African-American voters presently constitute an over 70% majority in three of the City's six wards.

At all materials times, Plaintiffs have enjoyed and freely exercised without impediment an unfettered right to equal opportunity to participate in the electoral process in Natchez, which is what Section 2 of the VRA guarantees. However, Section 2 of the VRA "does not guarantee minority representation in direct proportion to the minority percentage of the population, rather it specifically excludes such a guarantee of proportionate representation." *Bryant v. Lawrence County*, 814 F.Supp. 1346, 1351 (S.D. Miss. 1993); *see also Ewing v. Monroe County*, 740 F. Supp. 417, 425 (N.D. Miss. 1990) (holding "the court is fully aware that, as stated in amended Section 2, there is no right to proportional representation and that it is denial of an equal opportunity to elect preferred candidates that is prohibited"). It appears from Plaintiffs'

842969

arguments that a guarantee of proportionate representation is precisely what they seek to accomplish in this matter.

Regarding Plaintiffs' 14th Amendment claims, Plaintiffs have likewise failed to demonstrate a substantial likelihood of success on the merits. This claim hinges on Plaintiffs' calculation of total deviation from the ideal ward boundaries based on Natchez's <u>current</u> ward boundaries. Plaintiffs submit that the total deviation amounts to 25.49%, which is calculated by adding the deviation between the most populated and least populated districts, or in this case Ward 3 (11.45% deviation from ideal) and Ward 4 (-14.04% deviation from ideal). Even assuming the Plaintiffs' calculations to be correct, Plaintiffs' request for injunctive relief fails to take into consideration the fact that Natchez is currently in the process of redistricting its wards. The ward boundaries and total deviation Plaintiffs base their 14th Amendment action upon <u>will no longer exist by the time this matter proceeds to trial</u>. To this end, it is well-settled that "simply because an election law has become unconstitutional does not necessarily mean a federal court should step in and rewrite it." *Mississippi State Conference of N.A.A.C.P. v. Barbour*, No. 3:11cv159-TSL-EGJ-LG-MTP, 2011 WL 1870222, at *6 (S.D. Miss. May 16, 2011) (citing *Arrington v. Elections Board*, 173 F.Supp.2d 856, 860 (E.D.Wis. 2001) (three-judge court)). While Natchez does not concede its ward boundaries have become unconstitutionally malapportioned, the City submits this is a non-issue. The City will have completed redistricting its ward boundaries before the next municipal election.

Plaintiffs have failed to carry their burden of demonstrating a substantial likelihood of success on their Section 2 of the VRA and 14th Amendment claims. This factor weighs against granting a preliminary injunction.

B. <u>Plaintiffs Have Not Demonstrated a Substantial Threat of Injury if a Preliminary Injunction is Not Granted.</u>

Plaintiffs have failed to demonstrate a substantial threat of injury if a preliminary injunction is not granted. It is insufficient to merely establish a risk of some harm in the future, rather the movant must make a "clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc.*, 809 F. 2d 223, 226 (3d Cir. 1987).

The "threat of injury" Plaintiffs allege to support their request for a preliminary injunction hinges on two assumptions: (1) that Plaintiffs' calculation of total population deviation from ideal ward population is correct, and (2) that such a deviation automatically results in irreparable harm to the Plaintiffs. However, without regard to Plaintiffs' calculations as to total population deviation, Plaintiffs' second assumption is flawed. The Fifth Circuit has declined the adoption of a *per se* rule which states that deprivation of voting rights constitutes irreparable injury. *Chisom v. Roemer*, 853 F.2d 1186, 1188-89 (5th Cir. 1988). Rather, the Court has stated that "the possibility that other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* Again, "simply because an election law has become unconstitutional does not necessarily mean a federal court should step in and rewrite it." *Mississippi State Conference of N.A.A.C.P. v. Barbour*, No. 3:11cv159-TSL-EGJ-LG-MTP, 2011 WL 1870222, at *6 (S.D. Miss. May 16, 2011) (citing *Arrington v. Elections Board*, 173 F.Supp.2d 856, 860 (E.D.Wis. 2001) (three-judge court)). Natchez's current ward boundaries are a non-issue, as the City is redistricting its wards and all future elections will be based on the redistricted wards.

Plaintiffs have demonstrated no actual "irreparable injury" or "injury in fact" that has occurred or is threatened to occur. Natchez's ward boundaries are being redistricted to reflect the population figures in the 2010 census. Absent evidence that the state branches will fail to timely

8

perform their duty to enact redistricting legislation, a federal court must neither affirmatively obstruct state reapportionment, nor permit federal litigation to be used to impede it. *Arrington*, 173 F.Supp.2d at 860 (citing *Growe v. Emison*, 507 U.S. 25, 34, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993)). Plaintiffs have presented no evidence demonstrating Natchez's current redistricting efforts will not be completed timely, and this Court should not permit Plaintiffs to use this litigation as a tool to impede the City's on-going redistricting efforts. This factor weighs against granting a preliminary injunction.

 C. <u>Balancing the Harms</u>.

 As set forth above, Plaintiffs have demonstrated no actual or threatened injury that will result in the absence of a preliminary injunction. Natchez is already redistricting its ward boundaries. Future elections, including the May 2016 party primary elections, will be based upon the redistricted ward boundaries, not the current boundaries Plaintiffs challenge in this litigation. There is simply no harm to the Plaintiffs justifying the granting of an injunction.

 On the other hand, granting the Plaintiffs' injunction would certainly threaten to harm the City of Natchez. "Intervention by the federal courts in state elections has always been serious business, not to be lightly engaged in." *Chisom*, 853 F.2d at 1189 (citing *Oden v. Brittain*, 396 U.S. 1210, 90 S.Ct. 4, 24 L.Ed.2d 32) (internal citations omitted). "With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree." *Reynolds v. Sims*, 377 U.S. 533, 585, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964). It is "appropriate, whenever practicable, to afford a reasonable opportunity for the legislature to meet constitutional requirements by

adopting a substitute measure rather than for the federal court to devise and order into effect its own plan." *Wise v. Lipscomb*, 437 U.S. 535, 540, 98 S.Ct 2493, 2497, 57 L.Ed.2d 411 (1978).

Again, Natchez is redistricting its ward boundaries. This process is underway, irrespective of any preliminary injunction or other Court order, and it is anticipated that a proposed redistricting plan will be complete in the coming weeks. Granting Plaintiffs preliminary injunctive relief only serves to unnecessarily complicate and add expense to the redistricting process for Natchez. The burden that the Plaintiffs' injunctive relief would impose on Natchez far outweighs any threatened harm to the Plaintiffs in the absence of an injunction. This factor weighs against granting a preliminary injunction.

D.   The Public Interest Is Not Served by Plaintiffs' Requested Injunction.

The public interest is not served in granting Plaintiffs' preliminary injunctive relief. Essentially, what Plaintiffs want is for this Court to wade into the process of redistricting Natchez's ward boundaries—a process undoubtedly within the purview and authority of Natchez's governing body. Federal courts should "jealously guard and sparingly use [their] awesome powers" to intervene in state elections. *Chisom*, 853 F.2d at 1188. This is particularly so here, where the alleged constitutional issues raised by Plaintiffs are being addressed by Natchez in connection with the development of its redistricting plan. The public interest is not served by having this Court inject itself into a municipal election purely prospectively, where the "injury" the Plaintiffs seek to address will become moot with the adoption of a redistricting plan by Natchez. This factor weighs against granting a preliminary injunction.

## V.   CONCLUSION

For the reasons set forth above, Natchez submits that the Plaintiffs have failed to carry their burden of proving each of the four prerequisites to the granting of a preliminary injunction.

842969

Plaintiffs' Motion for Preliminary Injunction [ECF No. 10] should be denied. Natchez further

submits that, because the City is presently in the process of redistricting its ward boundaries, this

litigation should be stayed pending Natchez timely completing said redistricting.

**Dated**:  July 27, 2015                    **Respectfully submitted,**

                                             **NATCHEZ, MISSISSIPPI**

                        **BY:   CARROLL WARREN & PARKER PLLC**

                        **BY:    _/s/ J. Chadwick Mask_____**
                                 **J. CHADWICK MASK**

**OF COUNSEL:**
J. Chadwick Mask (MSB #10621)
Christopher H. Coleman (MSB #101899)
Clifton M. Decker (MSB #102740)
**CARROLL WARREN & PARKER PLLC**
188 East Capitol Street, Suite 1200
Post Office Box 1005
Jackson, Mississippi 39215-1005
Telephone:      (601) 592-1010
Facsimile:      (601) 592-6060

Hyde Carby, Natchez City Attorney (MSB # 102932)
**CARBY & CARBY PC**
513 State Street
Post Office Box 1047
Natchez, Mississippi 39121-1047
Telephone:      (601) 445-5011
Facsimile:      (601) 445-5033

842969

<u>**CERTIFICATE OF SERVICE**</u>

I, J. Chadwick Mask, hereby certify that I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the following:

    Ellis Turnage, Esq.
    TURNAGE LAW OFFICE
    Post Office Box 216
    Cleveland, Mississippi 38732

    *Attorney for Plaintiff*

This the 27th day of July, 2015.

                                       */s/ J. Chadwick Mask*_____
                                       **J. Chadwick Mask**

12

842969